UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| M.Z.H.,<br><br>　　　　　Petitioner(s),<br><br>　v.<br><br>LAURA HERMOSILLO, et al.,<br><br>　　　　　Respondent(s). | CASE NO. C25-2523-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner[1] filed a habeas petition asserting that his arrest and re-detention near his workplace by masked United States Immigration and Customs Enforcement ("ICE") agents violated his right to due process. Dkt. No. 1. Petitioner also filed a motion for temporary restraining order ("TRO") (Dkt. No. 2), which the Court terminated in favor of resolving the petition on its merits on an expedited basis. *See* Dkt. No. 11. The Court also prohibited the Government[2] from transferring Petitioner out of this jurisdiction without leave of the Court. Dkt. No. 8.

---

[1] The Court GRANTS Petitioner's request to proceed in this action anonymously, "because public identification creates a risk of retaliatory physical harm due to Petitioner's status as an asylum seeker in the United States, and because the nature of Petitioner's claim is sensitive and highly personal." Dkt. No. 1 at 5 n.2 (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)).

[2] In this order, the Court refers to the federal Respondents—ICE's Seattle Field Office Director Laura Hermosillo, ICE's Acting Director Todd Lyons, U.S. Department of Homeland Security ("DHS") Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, DHS, and ICE—as "the Government."

ORDER GRANTING HABEAS PETITION - 1

The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 12, 14. Because the Court finds that Petitioner has established that his re-detention without a hearing violates his rights to due process, the Court will grant the habeas petition.

## I. BACKGROUND

Petitioner is an asylum seeker who arrived in the United States after fleeing Afghanistan in December 2023. Dkt. No. 3 ¶¶ 10–11. He entered without inspection, or being admitted or paroled, and United States Border Patrol commenced standard removal proceedings under 8 U.S.C. § 1229a. Dkt. No. 1 ¶ 71, Dkt. No. 13 ¶¶ 4–5. Petitioner was subsequently released on his own recognizance, subject to conditions of release. Dkt. No. 3 at 12. Petitioner moved with his wife and two children to Portland, Oregon, and filed an asylum application on April 4, 2024. *Id.* at 15–27, Dkt. No. 13 ¶ 8.

Petitioner was placed in ICE's "Alternative to Detention" ("ATD") program, which required him to download an application on his phone so that he could check in with his ICE officer every week. Dkt. No. 3 ¶ 16. On two occasions when his weekly check in conflicted with other events, such as Petitioner's immigration master calendar hearing or a medical emergency, Petitioner contacted his ICE officer and was instructed to verify the conflict and assured that he was not in violation of his release agreement. *Id.* ¶¶ 17–25. Petitioner was granted employment authorization, valid through October 2029. *Id.* at 29. Since arriving in the United States, he has worked as a supermarket cashier and Uber driver, but was a career public servant in the former Afghan government. *Id.* ¶ 2.

On November 12, 2025, Petitioner arrived early at his workplace and waited in his car. Dkt. No. 3 ¶ 26. Masked agents surrounded Petitioner's car; one of them told Petitioner he was a police officer and asked him to step out of his car. *Id.* ¶ 28. Petitioner complied and exited his car, and the agents handcuffed him, placed him in an SUV, and drove him away. *Id.* ¶¶ 29–31.

ORDER GRANTING HABEAS PETITION - 2

Petitioner asked the agents why he was being arrested, and they told him they did not know. *Id.* ¶ 33. The agents asked him for his country of origin, his work history, and his home address, which led Petitioner to believe they did not know Petitioner's identity. *Id.* ¶ 34. Petitioner mentioned that he had applied for asylum, and one of the agents asked him when his master calendar hearing had been. *Id.* ¶ 35. Petitioner told him it was in July 2025, and one of the agents said that Petitioner had been ordered to come back to immigration court in August but had not appeared. *Id.* ¶ 35. Petitioner told him this was not true, and that he had never missed a court hearing, and the agents said he could ask "the judge" about it. *Id.* ¶ 36.

When Petitioner arrived at Portland's ICE field office, he again asked why he had been arrested. Dkt. No. 3 ¶ 37. Petitioner was told he had missed an ICE check-in, which Petitioner believed was not true and he asked for more details.[3] *Id.* ¶ 38. Again, he was told to ask "the judge" about this. *Id.* ¶ 39. The ICE officers again asked for Petitioner's biographical information, which Petitioner interpreted as confirmation that they had not known his identity when he was arrested. *Id.* ¶ 40.

While Petitioner was detained at the Portland office, he was not allowed to speak to his wife or an attorney until he arrived at the Northwest ICE Processing Center in Tacoma, Washington. Dkt. No. 3 ¶ 41–42. Once he arrived in Tacoma, Petitioner was able to talk to his wife. *Id.* ¶ 42. Petitioner remains detained in Tacoma under, according to the Government, 8 U.S.C. § 1225(b).

Petitioner then filed a habeas petition along with a motion for TRO. Dkt. Nos. 1, 2. As noted above, the Court ordered expedited briefing on the habeas petition, and that briefing is now

---

[3] The Government contends that Petitioner missed an ICE check-in on February 20, 2025 (Dkt. No. 13 ¶ 9), but Petitioner has described multiple interactions with ICE after that time where he was reassured that he was in compliance with his conditions of release. *See* Dkt. No. 3 ¶¶ 17–25.

ORDER GRANTING HABEAS PETITION - 3

complete. Dkt. Nos. 1, 12, 14.[4]  For the following reasons, the Court finds that Petitioner's re-detention without notice and an opportunity to be heard violates his right to due process. Accordingly, the Court will grant the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[4] Although Petitioner requested oral argument on the petition, the Court finds it suitable for resolution on the written record.

ORDER GRANTING HABEAS PETITION - 4

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Although the Government does not address the *Mathews* test in its briefing (Dkt. No. 12), the Court will apply each *Mathews* factor in turn to determine whether Petitioner's re-detention without a hearing comports with constitutional due process requirements.

**A.    Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was detained and transferred to a facility in a different state, and remains in custody weeks later, undoubtedly presents a deprivation of Petitioner's interest in his liberty.

The Government does not explicitly dispute that Petitioner has a protected liberty interest in his freedom. The Government's return does state, without particularized analysis,[5] that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) (Dkt. No. 12 at 2–5), but Petitioner's status as a person who has been living and working in this country for nearly two years counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g.*, *Salgado v. Mattos*, No. 2:25-cv-01872-RJB-EJY, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep

---

[5] The Government's return does not contain any legal argument that pertains specifically to Petitioner. It contains sections titled "Introduction," "Detention Authorities," and "Facts," but lacks an analysis section containing legal arguments as applied to the facts of this case. *See* Dkt. No. 12. The return does not address Petitioner's due process arguments in any fashion. *Id.*

ORDER GRANTING HABEAS PETITION - 5

financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues" (citation modified)). "The federal courts have uniformly held that § 1225(b) does not apply to noncitizens," like Petitioner, "who are present within the United States with the government's permission and have been residing in the interior of the United States for several years." *Alvarez v. Rivas*, No. CV 25-02943 PXS GMS (CDB), 2025 WL 2898389, at *22 (D. Ariz. Oct. 7, 2025) (collecting cases). The Government's interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025).

Moreover, although the Government's return contains a discussion of expedited removal procedures (Dkt. No. 12 at 3–4), there is no evidence that Petitioner is subject to expedited removal procedures.[6] His notice to appear references standard removal procedures (Dkt. No. 3 at 10). The Government's return also references humanitarian parole (Dkt. No. 12 at 4) yet does not contend that Petitioner was paroled and again, such a suggestion is inconsistent with the terms of Petitioner's order for release on recognizance (Dkt. No. 3 at 12).

Under the circumstances of this case, the Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F.Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

---

[6] The record does not contain an order revoking Petitioner's release.

ORDER GRANTING HABEAS PETITION - 6

### B.  The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing.

As described earlier in this order, Petitioner was arrested by ICE agents at his workplace. Those agents did not appear to know Petitioner's identity and did not inform him why he was being detained, and upon Petitioner's questioning, they provided him shifting justifications. And although the Government appears to have settled on a theory that Petitioner's release was revoked because he violated the conditions of his ATD release in January 2024 and February 2025—an accusation that Petitioner strongly disputes—the only "evidence" of the revocation or the violations they submit is the declaration of a deportation officer, Gabriel Arambula. Dkt. No. 13 ¶¶ 7, 9, 11. Arambula states that he "make[s] this declaration based upon my personal and professional knowledge, obtained from various records and systems maintained by ICE in the regular course of business." *Id.* ¶ 2. Arambula did not attach any records to the declaration, nor is any ICE system identified specifically. *Id.*

Petitioner challenges the admissibility of the Arambula declaration because it contains hearsay and violates the best evidence rule. Dkt. No. 14 at 11–14. Arambula does not describe any personal knowledge of the facts stated in the declaration, but instead provides a summary of ICE records (containing, apparently, the statements of others) and systems not identified or attached to the declaration. Dkt. No. 13 ¶¶ 2, 7, 9, 11. Under the best evidence rule, "[a]n original writing ... is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise." Fed. R. Evid. 1002. Moreover, because Arambula's declaration is based on the out-of-court statements of others, which were allegedly logged into ICE records, Arambula's declaration contains hearsay within hearsay. Even if the ICE violation

ORDER GRANTING HABEAS PETITION - 7

records themselves could fall into the business records exception to the rule against hearsay, Arambula did not offer the records themselves or even directly state that he reviewed the records. In the absence of a hearsay exception that would apply to Arambula's summary of the records, this testimony is inadmissible. *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir. 1999) (stating that for hearsay-within-hearsay to be admissible, "each layer of hearsay must satisfy an exception to the hearsay rule"). Another district court in this circuit has granted a motion to strike similar evidence. *See S-M-J v. Bostock*, No. 6:25-cv-01425-MTK, 2025 WL 3137296, at *3–4 (D. Or. Nov. 10, 2025) (granting a motion to strike a similar declaration as lacking foundation).

But even if the Government *had* submitted admissible evidence of Petitioner's ATD violations along with its return, such evidence would not necessarily alter the Court's analysis of Petitioner's due process claim. The factual justification for Petitioner's detention should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court. *See, e.g.*, *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025) (explaining that factual disputes as to violations of release conditions "must be adjudicated at a pre-deprivation hearing and they do not extinguish the liberty interest that grew when Respondents 'permitted [Petitioner-Plaintiff] to develop an out-of-custody life in the United States' over the past five years" (quoting *Pinchi*, 792 F. Supp. 3d at 1034 n.5)). Petitioner's lengthy and compelling rebuttal of the Government's violation allegations should not be resolved, in the first instance, in this litigation.[7] Nonetheless, that Petitioner persuasively disputed his violations in his petition, and the Government provided minimal support for the existence of those violations

---

[7] Along with the traverse, Petitioner submitted another declaration detailing disturbing Government efforts to coerce him into admitting violations he contests. Dkt. No. 15 ¶¶ 29–33. Any efforts to backfill the Government's justification for detaining Petitioner after he was already detained further erodes the Court's confidence in the procedural safeguards provided to Petitioner.

ORDER GRANTING HABEAS PETITION - 8

in its return, only highlights the magnitude of the risk of erroneous deprivation of Petitioner's liberty interest.

Under these circumstances, the Court finds that the second *Mathews* factor favors Petitioner.

**C.    The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is "minimal": any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner has had multiple appointments and conversations with ICE where any alleged violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable. The third *Mathews* factor therefore favors Petitioner.

Based on this review of the *Mathews* factors, the Court finds that the Petitioner's liberty interest in his continuing release from custody is entitled to constitutional protections of due process, and that having received no process related to his re-detention, Petitioner's constitutional rights have been violated.

### III.  REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged ATD violations. *See, e.g.*, *Llanes Tellez*, 2025 WL 3677937, at *9 ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process.").

### IV.  CONCLUSION

For these reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus. Dkt. No. 1. The Government is ORDERED to immediately release Petitioner from custody, subject to the same conditions that governed his release prior to his detention in November 2025. The Government may not re-detain Petitioner until after a hearing with adequate notice on his alleged ATD violations before a neutral decisionmaker.

The Government shall file a status report no later than December 24, 2025, documenting the steps taken to comply with this order.

Dated this 23rd day of December, 2025.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge