UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| M.Z.H., | CASE NO. C25-2523-KKE |
| Petitioner(s), | ORDER GRANTING FEE PETITION |
| v. | |
| LAURA HERMOSILLO, et al., | |
| Respondent(s). | |

The Court granted Petitioner's petition for writ of habeas corpus, and Petitioner now requests attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Dkt. No. 19.  The Federal Respondents (hereinafter "the Government") oppose the motion, arguing that Petitioner requests fees for an excessive number of hours.  Dkt. No. 21.  Because the Court finds that Petitioner's request is reasonable, the Court will grant Petitioner's motion and award him the fees requested.

## I.    BACKGROUND

Petitioner is an asylum seeker who arrived in the United States after fleeing Afghanistan in December 2023.  Dkt. No. 3 ¶¶ 10–11.  He entered without inspection, or being admitted or paroled, and United States Border Patrol commenced standard removal proceedings under 8 U.S.C. § 1229a.  Dkt. No. 1 ¶ 71, Dkt. No. 13 ¶¶ 4–5.  Petitioner was subsequently released on his own recognizance, subject to conditions of release.  Dkt. No. 3 at 12.  Petitioner moved with his

ORDER GRANTING FEE PETITION - 1

wife and two children to Portland, Oregon, and filed an asylum application on April 4, 2024. *Id.* at 15–27, Dkt. No. 13 ¶ 8.

U.S. Immigration and Customs Enforcement ("ICE") enrolled Petitioner in its "Alternative to Detention" program, which required him to download an application on his phone so that he could check in with his ICE officer every week. Dkt. No. 3 ¶ 16. On two occasions when his weekly check in conflicted with other events, such as Petitioner's immigration master calendar hearing or a medical emergency, Petitioner contacted his ICE officer and was instructed to verify the conflict and assured that he was not in violation of his release agreement. *Id.* ¶¶ 17–25.

On November 12, 2025, Petitioner arrived early at his workplace and waited in his car. Dkt. No. 3 ¶ 26. Masked agents surrounded Petitioner's car; one of them told Petitioner he was a police officer and asked him to step out of his car. *Id.* ¶ 28. Petitioner complied and exited his car, and the agents handcuffed him, placed him in an SUV, and drove him away. *Id.* ¶¶ 29–31. Petitioner asked the agents why he was being arrested, and they told him they did not know. *Id.* ¶ 33. The agents asked him for his country of origin, his work history, and his home address, which led Petitioner to believe they did not know Petitioner's identity. *Id.* ¶ 34. Petitioner mentioned that he had applied for asylum, and one of the agents asked him when his master calendar hearing had been. *Id.* ¶ 35. Petitioner told him it was in July 2025, and one of the agents said that Petitioner had been ordered to come back to immigration court in August but had not appeared. *Id.* ¶ 35. Petitioner told him this was not true, and that he had never missed a court hearing, and the agents said he could ask "the judge" about it. *Id.* ¶ 36.

When Petitioner arrived at Portland's ICE field office, he again asked why he had been arrested. Dkt. No. 3 ¶ 37. Petitioner was told he had missed an ICE check-in, which Petitioner

ORDER GRANTING FEE PETITION - 2

believed was not true and he asked for more details.[1]  *Id.* ¶ 38.  Again, he was told to ask "the judge" about this.  *Id.* ¶ 39.  The ICE officers again asked for Petitioner's biographical information, which Petitioner interpreted as confirmation that they had not known his identity when he was arrested.  *Id.* ¶ 40.

While Petitioner was detained at the Portland office, he was not allowed to speak to his wife or an attorney until he arrived at the Northwest ICE Processing Center in Tacoma, Washington.  Dkt. No. 3 ¶ 41–42.  Once he arrived in Tacoma, Petitioner was able to talk to his wife.  *Id.* ¶ 42.

Petitioner then filed a habeas petition along with a motion for temporary restraining order ("TRO").  Dkt. Nos. 1, 2.  The Court ordered expedited briefing on the habeas petition (terminating the TRO motion).  Dkt. No. 11.  After considering that briefing, the Court granted the habeas petition and ordered Petitioner's release.  Dkt. No. 16.  Petitioner now requests that the Court award him $41,115.82 in attorney's fees under EAJA.  Dkt. Nos. 19, 22.

## II.  ANALYSIS

### A.  Legal Standards

A party may recover fees and costs under EAJA only if (1) the party prevailed in the action, (2) the Government has failed to show that its position was not "substantially justified" and that no special circumstances would make an award unjust, and (3) the requested fees and costs are reasonable.  *See* 28 U.S.C. § 2412(b), (d); *United States v. Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009).  The Government bears the "burden to show that its position was substantially justified." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).  If a plaintiff is entitled to an award, the court

---

[1] The Government contended that Petitioner missed an ICE check-in on February 20, 2025 (Dkt. No. 13 ¶ 9), but Petitioner described multiple interactions with ICE after that time where he was reassured that he was in compliance with his conditions of release.  *See* Dkt. No. 3 ¶¶ 17–25.

ORDER GRANTING FEE PETITION - 3

determines the fees to be awarded by first calculating the lodestar, which is the product of a reasonable hourly rate and a reasonable number of hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, there is no dispute that Petitioner is the prevailing party, that his EAJA petition was timely filed, that he is eligible for a fee award under EAJA, that the requested hourly rate is reasonable, or that fees are warranted "in principle." Dkt. No. 21 at 2 n.2. The Government challenges only the number of hours expended, contending that "the number of hours claimed in this case are excessive, duplicative, impermissibly vague, compound and unreasonable[.]" *Id*. For the following reasons, the Court disagrees and will grant the fee petition in full.

**B.      Counsel Expended a Reasonable Number of Hours in Litigating This Case.**

The Government argues that the 156.08 hours[2] counsel expended in this case is excessive for a "single-petitioner habeas action that was resolved on an expedited written record and, critically, without substantive opposition from the Government." Dkt. No. 21 at 2–3. The Government also emphasizes that this case "was resolved entirely on the papers, without discovery, without an evidentiary hearing, and without oral argument." *Id*. at 3. The Government suggests that the Court reduce the number of hours compensated by 80% to account for "the excessive total hours, the duplication between attorneys, the disproportionate time spent on routine filings, and the straightforward nature of the proceeding." *Id*. at 5.

The Court disagrees with the Government's characterization of this proceeding as routine and straightforward. The Court indeed highlighted the lack of analysis in the Government's return, along with the Government's failure to include any facts specific to the Petitioner. Dkt. No. 16 at 5 n.5. Incredibly, the Government now cites its own failure to justify Petitioner's detention as a

---

[2] Petitioner also requests an additional three hours for the time expended preparing the reply to the fee petition. Dkt. No. 22 at 6.

ORDER GRANTING FEE PETITION - 4

basis to deny him reasonable attorney's fees, arguing "[n]o reasonable paying client would accept being billed nearly fifty hours to respond to a seven-page, largely non-analytical filing." Dkt. No. 21 at 3. While the Court agrees the Government's return was in fact "non-analytical," this argument entirely overlooks the substance of the Court's ruling. The Court granted the habeas petition in part based upon the additional arguments and evidence Petitioner submitted along with his traverse (Dkt. No. 16 at 7–9), demonstrating that the time expended for those tasks was worthwhile, despite the fact that—as the Government now concedes—the Government failed to present a defensible return.

Moreover, that the Government only half-heartedly opposed Petitioner's release does not transform this case into an uncontested proceeding. To the contrary, the Government's admittedly anemic return highlights why fees are appropriate in the first place—ICE's weekslong detention of Petitioner was so unjustified that the Government did not endeavor to meaningfully defend it. And yet, the Government opposed the habeas petition anyway, without stating a good faith basis to do so, consuming scarce Court resources and continuing to deprive Petitioner of his liberty without any justification that a Government lawyer could write in a brief. That the Government would argue this warrants *reducing* Petitioner's fee request is an extraordinary state of affairs indeed.

On these facts, the Court has no basis to find that any hours expended in this case reflects an excessive "level of effort" (Dkt. No. 21 at 3). *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). The Court finds that the Government's decision to present a vigorous opposition to the fee motion—seeking to be rewarded for failing to mount any meaningful defense to the habeas petition itself—reflects audaciously misguided

ORDER GRANTING FEE PETITION - 5

priorities.  If, in the future, the Government wishes to obviate a petitioner's need to file a traverse, it should agree to release the petitioner rather than file a return.  Short of that, the Government should expect the Court to issue orders granting motions for fees that reflect the full amount of attorney's fees reasonably necessitated by the Government's unjustified conduct.

In sum, the Court finds that Petitioner's counsel reasonably expended time to obtain full relief for Petitioner and should be compensated for that time.

### III.    CONCLUSION

For these reasons, the Court GRANTS Petitioner's motion.  Dkt. No. 19.  Under EAJA, Petitioner is entitled to an award of $41,115.82 in attorney's fees.  *See* Dkt. No. 22 at 6.

Dated this 3rd day of June, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING FEE PETITION - 6